UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID DARNELL NELSON, JR.,

        Plaintiff,

v.                                                                 Case No. 20-cv-1395-pp

CAPTAIN ACKERMAN, OFFICER MORRIS,
OFFICER MORIS, OFFICER FLEMMING
and OFFICER MALIES,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT AND DISCOVERY (DKT. NO. 9) AND SCREENING COMPLAINT**

---

David Darnell Nelson, Jr., a former inmate at Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to protect him from harming himself by giving him plastic items they knew he would swallow. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, and for summary judgment and discovery, dkt. no. 9, and screens the complaint, dkt. no. 1.

I.     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with

1

his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 17, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $0.71. Dkt. No. 6. The court received that fee on October 8, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint (Dkt. No. 1)

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff alleges that the defendants work for the Milwaukee Secure Detention Facility (MSDF). Dkt. No. 1 at 2. The plaintiff explains that he has hypothyroidism disease, which makes his personality change and makes him depressed. Id. He says that from May to July 2020, he was on "sharp plastic restrictions for swallowing pencils, sharp plastic (medication cups and sharp plastic cup for [his] peanut butter out of [his] snack bag that [he] was getting

3

every afternoon or after dinner." Id. at 2–3. The plaintiff says an officer gave him his snack bag without checking to see whether it had sharp plastic in it and told him to kill himself, referring to him by a racist slur. Id. at 3. The plaintiff says the bag contained a sharp plastic cup with peanut butter in it; the plaintiff started eating the cup. Id. Another officer gave him a plastic spoon for eating breakfast; he started eating that. Id. The plaintiff says that he doesn't know the names of all the officers who gave him plastic; he says some of the names were Morris, Fleming and Sgt. Scherr, and all the officers were on duty at the Milwaukee Secure Detention Facility between May and July 2020. Id.

The plaintiff says that Captain Ackerman,[1] the captain of the Restricted Housing/Segregation Unit, told the plaintiff that he would "make sure" that "his" sergeant and officers would not give the plaintiff sharp plastic. Id. at 2. The plaintiff alleges, however, that all of Ackerman's officers and sergeants gave him sharp plastic to kill himself, because they knew he was suffering from the personality changes and other disorders. Id. The plaintiff asserts that Ackerman admitted that his officers gave the plaintiff sharp plastic to harm himself. Id. He alleges that this violated Department of Corrections rules, policies and procedures. Id. He also alleges that it was negligent, cruel and unusual and deliberately indifferent and that the officers failed to protect him. Id. The plaintiff says that he filed a grievance—MSDF-2020-10739—and that the inmate complaint examiner confirmed the grievance. Id. at 2, 3.

---

[1] The plaintiff also refers to this captain as "Ackerson." Dkt No. 1 at 2.

4

He seeks to proceed against "the officers that was working from the time [he] was on sharp plastic restrictions in [MSDF] from May-July 2020." Id. He states that other unnamed officers refused to give him clothes or kept him in an observation cell when he was not suicidal. Id. at 4. He says the psychiatric services unit put him on "the unusual and cru[e]l punishment restrictions because [he] kept swallowing plastic cups, spoons and pencials [sic]." Id. The plaintiff seeks $100 million in damages against the officers who "fail[ed] to protect [him] while mentally ill." Id.

C. Analysis

The plaintiff's allegations that MSDF officers failed to protect him from harming himself implicate the Eighth Amendment, which prohibits cruel and unusual punishment. The Eighth Amendment "imposes duties" on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). Prison officials have a duty to intervene to protect an inmate from acts of self-harm, "up to and including suicide." See Miranda v. Cty. of Lake, 900 F.3d 335, 349 (7th Cir. 2018) (citing Rice *ex rel.* Rice v. Corr. Med. Servs., 675 F.3d 650, 665 (7th Cir. 2012)).

An Eighth Amendment claim has both an objective and a subjective component. Farmer, 511 U.S. at 834. The objective component requires the inmate to show that he faces "a substantial risk of serious harm." Id. The subjective component requires him to show that the prison officials "have a

5

'sufficiently culpable state of mind.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

The Court of Appeals for the Seventh Circuit has held "in numerous cases" that suicide, attempted suicide and other acts of self-harm pose "a serious harm" that satisfies the objective component of an Eighth Amendment claim. Estate of Miller, *ex rel.* Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012) (citing cases); see Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006). To satisfy the subjective component, the plaintiff must show that the defendants subjectively knew he "was at substantial risk" of harming himself and intentionally or deliberately "disregarded the risk." Collins, 462 F.3d at 761. It is not enough to show that "a prison official *should have been* aware" of the risk; the defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Estate of Novack ex rel. Turbin v. Cty. of Wood, 226 F.3d 525, 529 (7th Cir. 2000) (emphasis in original)).

The plaintiff alleges that Captain Ackerman was aware of the plaintiff's tendency to self-harm and told the plaintiff that he would "make sure" sergeants and officers did not give the plaintiff plastic items. He says that despite this, those officers did give the plaintiff plastic items, which he ate in an attempt to harm himself. The plaintiff alleges that Ackerman admitted that his officers had given the plaintiff plastic. These allegations are enough to state a claim against Ackerman for failing to protect the plaintiff from harming himself by swallowing plastic items.

6

Whether the plaintiff states a claim against the other officers is a closer call. He states that Officers Morris and Flemming and Sergeant Sherr gave him plastic items at some point. But he does not allege that those officers knew that the plaintiff was at risk to harm himself or that they knew that he was on a plastic items restriction. The plaintiff does not allege, for example, that the officers gave him the plastic items after Captain Ackerman instructed them not to. If the officers were not subjectively aware of the plaintiff's plastic restriction when they gave him the items, they could not have *deliberately* disregarded the risk of harm by giving him the items. They may have been negligent, but negligence does not violate the constitution. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

Liberally construing the complaint at this early stage, however, the plaintiff appears to be claiming that these defendants gave him plastic items knowing that he was not supposed to have them. The court will allow the plaintiff to proceed on an Eighth Amendment claim against Officers Morris and Flemming and Sergeant Sherr. The fact that the court is allowing the plaintiff to proceed against these defendants at the screening stage, however, does not mean that the defendants may not be able to show that they were not aware that the plaintiff was on a plastics restriction or did not know that he was at risk of harming himself at a later date.

The plaintiff also says that other officers, whose names he does not know, were aware of his medical restriction but disregarded it and gave him sharp plastic items. He says that these officers worked at MSDF while he was

on the plastic restriction, from May to July 2020. The court will not allow the plaintiff to proceed against *every* officer who worked at MSDF during those three months. The plaintiff also says that other officers placed restrictions on him unrelated to his mental illness, including not giving him clothes. But he does not name these officers either or say how many officers were involved.

The court will add "John Doe Officers" to the docket as a placeholder for the unknown officers the plaintiff wants to sue. That includes those who gave him plastic items and those who placed unnecessary medical restrictions on him. The court will add MSDF Warden Steven R. Johnson as a defendant for the limited purpose of helping the plaintiff identify the unknown officers. See Donald v. Cook Cty. Sheriff's Dept., 95 F.3d 548, 556 (7th Cir. 1996).

Warden Johnson does not have to respond to the complaint. After Warden Johnson's attorney files an appearance in this case, the plaintiff may serve discovery upon Warden Johnson (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the officers he wants to sue. For example, the plaintiff may serve the warden with interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Warden Johnson, the plaintiff's discovery requests must be limited to information or documents that will help him learn the real name of the unknown officers. The plaintiff may not ask Warden Johnson about any other topic, and Warden Johnson is under no obligation to respond to requests about any other topic. After the plaintiff learns the names

of the officers that he alleges violated his constitutional rights, he must file a motion to substitute their names for the John Doe placeholder. At that point, the court will dismiss Warden Johnson.

The plaintiff must identify the names of the John Doe Officers **within sixty days** of Warden Johnson's attorney filing an appearance. If, within sixty days of the date on which Warden Johnson's attorney files an appearance, the plaintiff does not identify the Doe Officers or explain to the court why he is unable to do so, the court will dismiss the John Doe Officers, and the case will proceed only against the named defendants.

The plaintiff lists Officer Moris[2] and Officer Malies as defendants in the caption of his complaint. But he does not mention them in the body of his complaint, name them as officers who gave him plastic items, or allege that they committed any misconduct. For a person to be liable under §1983, they must have been personally involved in the conduct that violated the plaintiff's rights. Simply listing names in the caption of the complaint without explaining what those persons did or failed to do does not state a claim against those persons. See Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017) (noting that to establish liability under § 1983, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct"). The court will dismiss Officers Moris and Malies.

---

[2] He mentions "Moris" in addition to "Morris," so it appears that "Moris" is a different individual from "Morris."

9

To the extent the plaintiff seeks to proceed on a claim that officers violated Department of Corrections rules or policies by giving him the plastic items, he fails to state a claim. Section 1983 protects against constitutional violations, not violations of prison policies or rules. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). The plaintiff may not proceed on a claim that prison officials violated Department of Corrections rules or policies.

### III. Plaintiff's Letter and Requests (Dkt. No. 9)

In early January, the court received a letter from the plaintiff. Dkt. No. 9. The handwritten letter is very light and difficult to read. As best the court can tell, the plaintiff reiterates allegations from his complaint about officers giving him plastic items and his affirmed grievance about their actions. Id. at 1. The plaintiff states he "wants a motion for summary judgment and discovery." Id. at 1. He also reiterates his request to proceed without prepaying the filing fee. Id. at 2.

The court will deny the plaintiff's requests. As explained in another of the plaintiff's cases, this case is in the early stages. The next step is for the court to order the defendants to respond to the plaintiff's complaint. After the defendants have responded, the court will set deadlines for the parties to conduct discovery and file motions for summary judgment. During discovery, the plaintiff may ask the defendants questions about his allegations and request documents from them. The court will provide the plaintiff with more information about asking questions and requesting documents in a future

order. After the parties have finished the discovery process, they may move for summary judgment. The court also will provide more information about summary judgment in the future order. Because the court is granting the plaintiff's first request to proceed without prepaying the filing fee, his second request is moot.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's second request to proceed without prepaying the filing fee and **DENIES** his requests for summary judgment and discovery. Dkt. No. 9.

The court **DISMISSES** Officer Moris and Officer Malies.

The court **DIRECTS** the Clerk of Court to substitute "John Doe Officers" for the "Unknown" defendant on the docket.

The court **DIRECTS** the Clerk of Court to add MSDF Warden Steven R. Johnson as a defendant for the limited purpose of helping the plaintiff identify the John Doe Officers.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Captain Ackerman, Officer Morris, Officer Flemming and Sergeant Sherr. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

11

Under the same informal service agreement, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Warden Johnson. The court **ORDERS** that Warden Johnson **does not** have to respond to the plaintiff's complaint; however, he must respond to the plaintiff's discovery requests as described in this order.

The court **ORDERS** the plaintiff to identify the real names of the John Doe Officers **within sixty days** of Warden Johnson's attorney filing an appearance in the case. If he does not or does not explain to the court why he is unable to identify the John Doe Officers, the court will dismiss the John Doe Officers, and this case will proceed only against the named defendants.

The court **ORDERS** that the plaintiff must pay the $349.29 balance of the filing fee as he is able.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 10th day of February, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**